18 F.3d 188
 Vincent GAGLIARDI and Sally Gagliardi, Plaintiffs-Appellants,
v.
The VILLAGE OF PAWLING; Joseph Governale; Louis Musella;
Thomas Sage; Darrell Dumas; Robert Nielsen, individually
and as members of the Board of Appeals of Pawling; the
Board of Appeals of the Village of Pawling; The Planning
Board of the Village of Pawling; the Board of Trustees of
the Village of Pawling; Bluford Jackson, Building Inspector
of the Village of Pawling, Defendants-Appellees,
Lumelite Corporation, Defendant.
 No. 666, Docket 93-7639.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 15, 1993.
Decided March 9, 1994.
 
 Robert A. Spolzino, Mt. Kisco, NY (Thomas J. Singleton, Mt. Kisco, NY, of counsel), for Plaintiffs-Appellants.
 Lisa Shrewsbury, New York, NY (D'Amato & Lynch, New York, NY, of counsel), for Defendants-Appellees.
 Before: MINER, MAHONEY and HEANEY,* Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Vincent and Sally Gagliardi appeal from a judgment entered on May 27, 1993 in the United States District Court for the Southern District of New York (Brieant, J.) dismissing their complaint for failure to state claims under 42 U.S.C. Secs. 1983, 1985 & 1986. The Gagliardis allege in the complaint that the Village of Pawling, the Pawling Village Zoning Board of Appeals ("ZBA") and its individual members, the Pawling Village Planning Board ("Planning Board"), the Pawling Village Board of Trustees ("Board of Trustees") and Village Building Inspector Bluford Jackson (collectively, the "Municipal Defendants") made improper zoning decisions affecting industrially zoned property owned by the Lumelite Corporation adjacent to the Gagliardis' residentially zoned property. They also allege that the Municipal Defendants failed to enforce the zoning laws as to the Lumelite property, all in a series of purposeful, retaliatory and conspiratorial actions designed to deprive them of their constitutional rights to substantive and procedural due process, equal protection and free speech.
 
 
 2
 The district court dismissed the complaint, finding that the Gagliardis did not have a property right in the enforcement of the zoning laws against others and that they failed to establish any viable equal protection or free speech claims. The Gagliardis contend on appeal that the district court erred in dismissing the complaint. For the reasons that follow, we affirm the district court's dismissal of the due process and equal protection claims and reverse the dismissal of the free speech claim.
 
 BACKGROUND
 
 3
 The Gagliardis purchased their residentially zoned property in the Village of Pawling, New York in 1975. Adjoining the property to the south is the industrially zoned property where Lumelite operates a plastics factory. In November of 1990, the Gagliardis commenced this lawsuit against the Village of Pawling, the ZBA, and its individual members, the Planning Board, the Board of Trustees, Building Inspector Bluford Jackson and Lumelite, alleging that these Municipal Defendants deprived the Gagliardis of their rights under the First, Fifth and Fourteenth Amendments, in violation of 42 U.S.C. Secs. 1983, 1985 & 1986, by making certain improper zoning decisions and by failing to enforce zoning regulations affecting the Lumelite property.
 
 
 4
 Given the posture of this proceeding, we accept the factual allegations in the complaint as true. In 1966, Lumelite entered into an agreement with Pawling whereby, in exchange for variances and rezoning, it promised (1) not to expand its operations to the north in the future; (2) to stucco and landscape its building; and (3) that machinery installed in the future would be located on the southern portion of the property. In 1981, Lumelite closed its main plant in Brewster, New York and consolidated its operations at the Pawling plant.
 
 
 5
 The Gagliardis allege that Lumelite then began violating provisions of the Pawling Zoning Code (the "Code") and the 1966 agreement with the Village by adopting manufacturing procedures that caused excessive noise and vibration and storing explosive material that created a hazardous situation and in various other ways. These violations allegedly have continued in varying degrees since 1981. The Gagliardis contend that they complained to Building Inspector Jackson and to Lumelite, and attended public meetings of the Board of Trustees, the Planning Board and the ZBA to voice their concerns about the violations, all to no avail.
 
 
 6
 The Gagliardis assert that the Municipal Defendants have engaged in a purposeful course of conduct designed to prefer unfairly the commercial interests of Lumelite. In 1981, for example, Lumelite constructed two industrial chillers on the northerly side of its property, allegedly without the approval of the Planning Board and in violation of the Code. The chillers purportedly cause excessive noise and vibration, also in violation of the Code, and, despite consistent complaints, the Municipal Defendants have done nothing to correct the situation. In 1985, in response to complaints by the Gagliardis and others, Pawling enacted a noise ordinance that set limits for noise generated by commercial and industrial operations in the Village. Allegedly, Lumelite's operations, including the chillers, are in continuous violation of the noise ordinance, and the Municipal Defendants have neither developed a procedure for testing noise levels generated by Lumelite nor taken measures to enforce the ordinance.
 
 
 7
 Also in 1985, Lumelite sought to construct two storage silos on the northern side of its property adjacent to the Gagliardi premises. Building Inspector Bluford granted Lumelite a building permit to erect the silos without approval of the Planning Board or the ZBA, in violation of the Code. The Gagliardis allege that, in response to their protest, the Municipal Defendants allowed Lumelite to submit an "after the fact" environmental assessment form and that, on November 4, 1985, the Planning Board held an "unannounced and secret" meeting to confirm the "illegal actions." On November 7, 1985, Lumelite constructed the silos.
 
 
 8
 In December of 1985, the Gagliardis filed an Article 78 petition in the New York Supreme Court, Dutchess County (Beisner, J.) against Building Inspector Jackson, the Board of Trustees, the Planning Board and the ZBA, seeking to compel cancellation of the building permit issued with respect to the silos. While this petition was pending, the ZBA granted Lumelite a height variance for the silos, contingent on Lumelite taking certain protective measures relating to parking and the loading and unloading of tank trucks. Also, Lumelite was required to plant trees to form a screening barrier on the northern side of its property, on the border of the Gagliardi property. The Gagliardis allege that these provisions were insufficient to protect their rights and, in any event, have not been complied with or enforced. In a December 22, 1987 judgment, the New York Supreme Court granted their petition and annulled the building permit and site plan approval granted by the Planning Board. The Gagliardis allege that the defendants failed to comply with the 1987 judgment and that the silos were removed in September of 1990 for unrelated reasons.
 
 
 9
 Finally, in 1990, Lumelite arranged a property "swap" with the Masonic Guild of Pawling (the "Guild"). The Guild had operated a lodge, which was destroyed by fire in January of 1989, on property adjacent to the southwest portion of the Lumelite property. In May of 1989, the Guild had been denied a site plan approval for the restoration of the lodge because it needed certain variances. The Guild then filed an application for the necessary variances with the ZBA but later entered into an agreement with Lumelite to exchange the Guild's property for a parcel of land on the Northwest portion of the Lumelite property, adjoining the Gagliardi property.
 
 
 10
 The Guild modified its pending ZBA application to seek seven area variances and two use variances for the reconstruction of the lodge on the swapped property. After hearings in March, April and May of 1990, at which Sally Gagliardi voiced strong opposition to the granting of the variances, the ZBA, on May 31, 1990, granted the Guild the relief requested. The ZBA determined that the Guild's application was "a relocation of a nonconforming building and nonconforming use and therefore the strict application of the criteria ordinarily applied to a use variance are not required." The Gagliardis commenced a second Article 78 proceeding in Supreme Court, Dutchess County, challenging the May 31, 1990 determination on the grounds that the decision of the ZBA was in violation of applicable zoning laws and statutory and common law rules of zoning. That proceeding was dismissed on July 29, 1990 as time barred.
 
 
 11
 The Gagliardis thereafter commenced this action against the Municipal Defendants and Lumelite, alleging that the foregoing events comprised a series of purposeful, retaliatory and conspiratorial actions designed to deprive the Gagliardis of their constitutional rights. The complaint includes seven causes of action. The first four allege deprivation of the Gagliardis' rights to procedural and substantive due process, equal protection and free speech, in violation of 42 U.S.C. Sec. 1983. The fifth and sixth causes of action allege a conspiracy and neglect to prevent a conspiracy to violate the Gagliardis' constitutional rights, in violation of 42 U.S.C. Secs. 1985 & 1986. The seventh cause of action alleges common law nuisance.
 
 
 12
 By stipulation, the complaint was dismissed without prejudice against Lumelite in December of 1990. On December 19, 1990, the Municipal Defendants moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. The district court sua sponte converted the motion to one for summary judgment and, in a Memorandum Decision and Order dated May 26, 1993, granted summary judgment to the Municipal Defendants and dismissed the complaint with prejudice as to all claims except the pendent state law nuisance claim, which was dismissed without prejudice. The district court found that the Gagliardis had no protectible property right because zoning laws and land use regulations are enacted for the general health and welfare of the entire public, that the complaint alleged no equal protection or free speech claims and that no conspiracy claim was stated because the complaint failed to include allegations that the violations were racially motivated or class based. This appeal followed.
 
 DISCUSSION
 
 13
 Before addressing the merits of this appeal, we first note the procedural disposition of the motion below. While the motion was made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, the district court sua sponte converted the motion to one for summary judgment. Although Rule 12(c) provides for conversion where material outside the pleadings has been considered by the court, the parties must be given an opportunity to submit any material pertinent to a Rule 56 motion for summary judgment. Fed.R.Civ.P. 12(c); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir.1991). The parties here were not given an opportunity to submit any pertinent material; moreover, there had been no discovery by the time the motion was made.
 
 
 14
 While we question the procedure employed in the conversion of the motion, the conversion is irrelevant because the motion was decided solely on a review of the complaint. Memoranda of law were submitted by the parties on the issue of whether a claim was stated under Rule 12(b)(6). See id. Accordingly, we apply de novo the familiar standard for review of a Rule 12(b)(6) motion, which requires a court to construe any well-pleaded factual allegations in the complaint in favor of the plaintiff and dismiss the complaint only if " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " Allen v. West-Point-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).
 
 1. Due Process Claims
 
 15
 The Gagliardis essentially contend that they have a property interest in the proper enforcement of the Code with regard to Lumelite's property. The argument is rather unique, since most due process challenges to land use regulations involve a property owner who has been denied a building permit or site plan or has had some other restriction placed on his own property. See, e.g., Brady v. Town of Colchester, 863 F.2d 205, 207-08 (2d Cir.1988) (town officials denied plaintiff a certificate of occupancy and revoked his building permit). Assuming without deciding that a property owner ever could have a protected interest in the enforcement of the zoning laws against an adjoining property, cf. West Farms Assocs. v. State Traffic Comm'n, 951 F.2d 469, 472 (2d Cir.1991) (generalized benefits conferred by statute are not property interests protected by the Due Process Clause), cert. denied, --- U.S. ----, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992), we find that no such right has been created here.
 
 
 16
 It is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner. See, e.g., RRI Realty Corp. v. Incorporated Village of Southampton, 870 F.2d 911, 918 (2d Cir.), cert. denied, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989). A plaintiff has a " 'legitimate claim of entitlement' " to a particular benefit if, " 'absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted.' " Id. 870 F.2d at 917 (quoting Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir.1985)). Where a local regulator has discretion with regard to the benefit at issue, there normally is no entitlement to that benefit. An entitlement to a benefit arises "only when the discretion of the issuing agency is so narrowly circumscribed" as to virtually assure conferral of the benefit. Id. 870 F.2d at 918; see Brady, 863 F.2d at 213. The issue of whether an individual has such a property interest is a question of law "[s]ince the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise." RRI Realty Corp., 870 F.2d at 918.
 
 
 17
 The allegations in the complaint involve two distinct activities by the Municipal Defendants. First, it is alleged that the Municipal Defendants improperly refused to enforce the zoning laws and provisions of the 1966 agreement against Lumelite and, second, it is alleged that the Municipal Defendants had no right to grant certain building permits, site plans and zoning variances to Lumelite and the Guild.
 
 
 18
 Most of the allegations in the complaint pertain to the alleged failure of the Municipal Defendants to enforce the applicable zoning laws and the 1966 agreement. They include the failure to prevent Lumelite from causing excessive noise, storing hazardous material and failing to provide adequate drainage of its land. Government officials, however, generally are given broad discretion in their decisions whether to undertake enforcement actions. See Heckler v. Chaney, 470 U.S. 821, 831, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985) ("decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion"); see also Wayte v. United States, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985) ("Government retains broad discretion as to whom to prosecute" because such decisions are "particularly ill-suited to judicial review") (internal quotations omitted). No due process right is implicated here because the Gagliardis have no right to demand that the Municipal Defendants enforce the zoning laws. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195, 109 S.Ct. 998, 1002-03, 103 L.Ed.2d 249 (1988) ("The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."); Heckler, 470 U.S. at 832, 105 S.Ct. at 1656 (refusal to act "generally does not [result in] exercise [of] coercive power over an individual's liberty or property rights").
 
 
 19
 The complaint includes allegations relating to certain positive actions taken by the Municipal Defendants, namely, the approval of a height variance and site plan and the issuance of a building permit to allow Lumelite to erect the two storage silos, and the granting of the zoning variances that facilitated the property swap between Lumelite and the Guild. Our review of the relevant provisions of the Code, sections 98-59,[1] 98-64[2] and 98-26,[3] indicates that the Municipal Defendants had broad discretion in determining whether to grant or deny the building permit, site plan and variances. Cf. RRI Realty Corp., 870 F.2d at 919 (no legitimate claim of entitlement since granting of building permit was discretionary); Yale Auto Parts, 758 F.2d at 59 (no legitimate claim of entitlement since certificate of location approval was discretionary). Accordingly, the grant to Lumelite and the Guild of the permit, site plan and variances did not infringe upon any protected property interest of the Gagliardis. See RRI Realty Corp., 870 F.2d at 918.
 
 
 20
 The Gagliardis also contend that they have stated a claim for deprivation of procedural due process arising from the Municipal Defendants' wrongful course of action. They complain of a lack of notice and contend that certain affirmative actions were taken without compliance with the procedures established for municipal approval. The deprivation of a procedural right to be heard, however, is not actionable when there is no protected right at stake. See Azizi v. Thornburgh, 908 F.2d 1130, 1134 (2d Cir.1990); see also New Burnham Prairie Homes, Inc. v. Village of Burnham, 910 F.2d 1474, 1479 (7th Cir.1990). Indeed, we previously have stated that, "if state law makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection." RR Village Ass'n, Inc. v. Denver Sewer Corp., 826 F.2d 1197, 1201-02 (2d Cir.1987). Since the Gagliardis lack a property interest in the enforcement of the Pawling zoning laws, they are unable to state an actionable claim for deprivation of procedural due process.
 
 2. Equal Protection Claims
 A. Section 1983 Claim
 
 21
 The Gagliardis contend that the failure of the Municipal Defendants to enforce the Pawling Code violated their right to equal protection of the laws. "To state an equal protection claim, a plaintiff must charge a governmental officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation.' " Brady, 863 F.2d at 216 (quoting Burt v. City of New York, 156 F.2d 791, 792 (2d Cir.1946)). To establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently. See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985); Yale Auto Parts, 758 F.2d at 61.
 
 
 22
 Here, the complaint merely includes bald allegations that the Municipal Defendants preferred the interests of Lumelite over the Gagliardis. It is devoid of any allegations that the Municipal Defendants would have enforced the Pawling Code at the request of another resident whose situation was similar to the Gagliardis. In the absence of any such factual allegations, the Gagliardis' equal protection claim is insufficient as a matter of law. See Brady, 863 F.2d at 216-17; Yale Auto Parts, 758 F.2d at 61 (allegation that others were treated differently is "essential" to an equal protection claim).
 
 B. Sections 1985 and 1986 Claims
 
 23
 The Gagliardis also allege claims of conspiracy and failure to prevent a conspiracy to violate their constitutional rights, in violation of 42 U.S.C. Secs. 1985 & 1986. Section 1985(3) prohibits conspiracies that are intended to deprive "either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." To recover under section 1985(3), a plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); accord Jews for Jesus, Inc. v. Jewish Community Relations Council, 968 F.2d 286, 290-91 (2d Cir.1992).
 
 
 24
 The complaint is devoid of any allegation that the alleged conspiracy was undertaken with any racial or class-based animus and, in fact, the Gagliardis concede as much. Nevertheless, relying on Selzer v. Berkowitz, 459 F.Supp. 347, 351-52 (E.D.N.Y.1978), the Gagliardis invite us to hold that, in section 1985 cases, the racial or class-based animus requirement does not apply to claims of conspiracy under color of state law. We decline to do so and reject the holding in Selzer that racial or class-based animus need not be established in such cases. In Griffin, the issue before the Court was whether a private conspiracy presented a cognizable claim under section 1985(3). In holding that it did, the Court emphasized that section 1985(3) could not be applied as a "general federal tort law" because invidious discriminatory motive is an element of the cause of action. 403 U.S. at 102, 91 S.Ct. at 1798. We discern no attempt by the Supreme Court in Griffin to draw a distinction between private conspiracies and conspiracies under color of state law for purposes of section 1985. Indeed, any such distinction would defeat the Court's direction that section 1985(3) not become a general federal tort law.
 
 
 25
 Although we have not addressed this issue directly, we previously have applied the racial or class-based animus requirement to claims of conspiracy under color of state law. See, e.g., Katz v. Klehammer, 902 F.2d 204, 207-08 (2d Cir.1990); Regan v. Sullivan, 557 F.2d 300, 307-08 (2d Cir.1977). To the extent that this requirement needs to be stated explicitly, we do so here. Other courts that have addressed this issue directly have come to the same conclusion. See, e.g., Munson v. Friske, 754 F.2d 683, 694-95, 695 n. 8 (7th Cir.1985); Conrad v. Perales, 818 F.Supp. 559, 564 (W.D.N.Y.1993); Kraft v. Jacka, 669 F.Supp. 333, 339 (D.Nev.1987); Stevens v. Rifkin, 608 F.Supp. 710, 720-21 (N.D.Cal.1984); Petrone v. City of Reading, 541 F.Supp. 735, 740-41 (E.D.Pa.1982).
 
 
 26
 The Gagliardis also have pleaded a claim under section 1986 for neglect to prevent the alleged conspiracy to deprive them of their rights to equal protection and of equal privileges and immunities under the laws. A claim under section 1986, however, lies only if there is a viable conspiracy claim under section 1985. See Jews For Jesus, 968 F.2d at 292. Since the Gagliardis have failed to state a claim for relief under section 1985, they cannot establish a violation of section 1986 and, therefore, this claim properly was dismissed.
 
 3. First Amendment Claim
 
 27
 The final federal claim pleaded by the Gagliardis in the complaint is predicated on the allegation that the Municipal Defendants' failure to enforce the Code against Lumelite and their acts of misconduct regarding certain zoning decisions were in retaliation for the Gagliardis' exercise of their right to free speech. To establish a retaliation claim under section 1983, a plaintiff "initially [must] show that [his] conduct was protected by the first amendment," Brady, 863 F.2d at 217, and that defendants' conduct was motivated by or substantially caused by his exercise of free speech, Easton v. Sundram, 947 F.2d 1011, 1015 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992); see also Mount Healthy City Sch. Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 284-85, 97 S.Ct. 568, 574-75, 50 L.Ed.2d 471 (1977) (government employee stated claim for wrongful discharge in retaliation for engaging in protected speech); Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 40-45 (1st Cir.1992) (plaintiff stated claim that officials denied permits in retaliation for political views of plaintiff).
 
 
 28
 The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment. Franco v. Kelly, 854 F.2d 584, 589 (2d Cir.1988); McCoy v. Goldin, 598 F.Supp. 310, 314 (S.D.N.Y.1984), see United Mine Workers v. Illinois Bar Assoc., 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967) (the right "to petition for a redress of grievances [is] among the most precious of liberties safeguarded by the Bill of Rights" and is "intimately connected ... with the other First Amendment rights of free speech and free press"). Here, the Gagliardis commenced Article 78 proceedings and attended public meetings and hearings of the Board of Trustees, the Planning Board and the ZBA to voice their concerns about the alleged violations. They also complained to Building Inspector Jackson. This conduct clearly is protected by the First Amendment.
 
 
 29
 We also conclude that the Gagliardis adequately have pleaded the requisite nexus between the exercise of their First Amendment rights and subsequent retaliatory conduct by the Municipal Defendants. The ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint. See Murphy v. Lane, 833 F.2d 106, 108 (7th Cir.1987) (per curiam); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir.1979). Indeed, Rule 9(b) of the Federal Rules of Civil Procedure provides that "[m]alice, intent, knowledge and other conditions of mind ... may be averred generally." While a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred. See Murphy, 833 F.2d at 108; see also Harris v. Eichbaum, 642 F.Supp. 1056, 1065 (D.Md.1986) (if plaintiff alleges facts regarding defendant's state of mind that, if proven, constitute a constitutional violation, the parties should proceed to discovery).
 
 
 30
 The Gagliardis specifically have pleaded that the Municipal Defendants "undertook a purposeful aggravated and persistent course of conspiratorial noncompliance and nonenforcement of the pertinent municipal, zoning, noise and safety ordinances, rules, regulations and laws" in "response" to the Gagliardis' efforts to remedy Lumelite's violations and that the Municipal Defendants have undertaken "a long series of purposeful, retaliatory and conspiratorial actions ... in violation of [the Gagliardis'] constitutional civil rights." Moreover, the Gagliardis began exercising their First Amendment rights in 1981 when Lumelite allegedly began violating the Code, and, according to the complaint, the Municipal Defendants continually failed to enforce the Code against Lumelite, failed to enforce the noise ordinance after its enactment in 1985, granted the permit, site plan and height variance for the silos in 1985 and 1986, and approved the property swap in 1990. These detailed allegations provide a chronology of events from which an inference can be drawn that actions taken by the Municipal Defendants were motivated by or substantially caused by the Gagliardis' exercise of their First Amendment rights. Therefore, the cause of action for retaliation pleaded in the complaint is sufficient to survive the Municipal Defendants' motion to dismiss.
 
 CONCLUSION
 
 31
 For the foregoing reasons, the district court's dismissal of the due process, equal protection and conspiracy claims is affirmed. The dismissal of the free speech claim is reversed and the case is remanded for further proceedings with regard to that claim.
 
 
 
 *
 Honorable Gerald W. Heaney, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 Section 98-59 states, in pertinent part, that the ZBA has the power to authorize variances that
 will not be contrary to the public interest and where, owing to exceptional and extraordinary circumstances, there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this chapter, subject to terms and conditions to be forced by the Zoning Board of Appeals.
 Code, Sec. 98-59(C)(3).
 
 
 [2]
 Section 98-64 provides, in pertinent part, for Planning Board approval of site plans, which must take into account "the public health, safety and general welfare, the impact of the proposed use on adjacent land uses, the comfort and convenience of the public in general and of the residents of the immediate neighborhood in particular." Code, Sec. 98-64(A)
 
 
 [3]
 Section 98-26 provides that any building or structure can be erected or altered only upon issuance of a building permit by the Building Inspector, which may be issued if the "proposed construction or use is in full conformance with all the provisions of this chapter and other applicable laws, ordinances, codes and regulations." Code, Sec. 98-26(B)