Robert COOPER, Plaintiff,

v.

TOWN OF EAST HAMPTON,
et al., Defendants.

No. 94–CV–2446.

United States District Court,
E.D. New York.

Jan. 17, 1995.

Patricia Weiss, Sag Harbor, NY, for Town
Councilman Cooper.

Vincent Fontana, of Wilson, Elser, Moskowitz, Edelman & Dicker, New York City,
for Town of East Hampton parties.

*MEMORANDUM AND ORDER*

PLATT, Chief Judge.

Plaintiff, Robert Cooper, moved this Court for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On October 28, 1994, this Court denied the motion from the bench and dismissed the case without prejudice for lack of federal jurisdiction. Upon reconsideration, however, this Court hereby finds that it does have jurisdiction over this matter and that the case shall not be dismissed.

**BACKGROUND**

Robert Cooper is one of five elected members of the East Hampton Town Board in Suffolk County, Long Island. The other Board members are Nancy McCaffrey, Cath-

erine Lester, Thomas Knobel and Stanton Bullock, the Town Supervisor.

In an executive session of the Board, which was held in the Fall of 1993 and which was open to the public, Councilman Cooper discussed concerns he had about possible misconduct and discrimination by the East Hampton Police Department.[1] He said that various citizens of East Hampton had brought these concerns to his attention. Cooper, who was himself an East Hampton Police Officer for over 22 years, thus moved the Town Board to conduct an independent investigation into the Police Department and its procedures. Yet the other Board members opposed his request and declined to conduct any such investigation.

In early 1994, Cooper discussed his concerns about the East Hampton Police with the editor of a local newspaper, called *The Independent.* On March 9, 1994, *The Independent* published an article, entitled "Misconduct Charges Erupt," in which it quoted Cooper as saying the following: "I'm relating what people come and tell me—that we have a problem. I'm not saying anyone is racist, only that [the Board] should look into these allegations." The article also quoted Police Chief Thomas Scott and Town Supervisor Bullock as expressing their opposing viewpoints.

In a Town Meeting on March 17, 1994, Cooper explained to the Board that he made the above-mentioned statements to *The Inde-*

*pendent* in order to express the public complaints he had received in his capacity as a Town official.

On March 30, 1994, Chief Scott filed a civil lawsuit against Cooper in the Supreme Court for Suffolk County, (case of *"Scott v. Cooper,"* File No. 94–7113), alleging two counts of defamation based upon Cooper's press statements. In accordance with New York Public Officers Law § 18, as well as § 20–6 of the East Hampton Town Code, Cooper made an application for the Town to pay for his legal defense in the defamation suit.[2]

On April 26, 1994, the East Hampton Town Attorney, Cynthia Ahlgren Shea, prepared a sixteen-page memorandum of law for the Board recommending that, under State law, Section 20–6 of the Town Code, as well as common law precedent, the Town was required to defend Cooper in the defamation suit unless and until a court ordered otherwise.[3]

At a Town Board meeting on May 6, 1994, however, the Board rejected a proposed Resolution to retain legal counsel for Cooper. Although Thomas Knobel voted in favor of the Resolution, Stanton Bullock and Catherine Lester voted against it, while Robert Cooper and Nancy McCaffrey abstained. Thus, the Resolution was rejected by a vote of 2 to 1. Councilman Knobel made the following statements to the *East Hampton*

---

**1.** Specifically, Cooper allegedly said the following: (1) "Police officers are targeting blacks and poor whites for arrest and sometimes physical abuse." (Town's Verified Amended Complaint in case No. 94–CV–4165 at ¶ 5); (2) "The Town Police target minorities and poor white people ... [Police Chief] Scott and Bullock have condoned this pattern of intimidation." (*Id.* at ¶ 6); and (3) "The East Hampton Police Department systematically targets blacks and poor whites." (*Id.* at ¶ 7).

**2.** Section 20–6 of the East Hampton Town Code reads as follows:

**Indemnification of Town Employees.**
B. The Town shall also provide for the defense of any employee in any action or civil proceeding, state or federal, arising out of any alleged act or omission which occurred or allegedly occurred while the employee was acting within the scope of his or her public employment or duties. This duty to provide for a defense shall not arise

where such civil action or proceeding is brought by or at the behest of the Town of East Hampton. D. The duty to indemnify and save harmless prescribed by this local law shall not arise where the injury or damage resulted from intentional wrongdoing or recklessness on the part of the employee. In the event that a court of law makes a determination that such injury or damage resulted from an intentional wrongdoing or recklessness on the part of an employee in a case where the town provided a defense pursuant to Subsection B above, such employee shall be responsible for the reimbursement to the town of all legal fees, costs, and disbursements expended by the Town in the defense of that action or proceeding.

**3.** A court might so order, she concluded, if it determined that Councilman Cooper had acted recklessly or with malicious intent pursuant to Town Code § 20–6(D), in which case the Town could seek indemnification from Cooper.

*Star* about why he voted in favor of the Resolution:

> It's the principle. I can't see how we could deny the man a defense without prejudging the facts of the lawsuit.... I would be predisposed to allow anyone who thinks he's acting in an official capacity to have the protection afforded an official.

Cooper's Verified Amended Complaint at ¶ 30. Councilwoman McCaffrey told a local newspaper that she abstained from voting because:

> Our Town Attorney has said we have to defend [Cooper], but I don't want to agree with that.... I think Cooper's allegations have done irreparable harm to our Police Department, and I see no evidence of problems with the police.

*Id.* at ¶ 32. Councilwoman Lester voted against the Resolution because, as she told the press:

> If [Cooper] wants us to represent him, he can sue the Board to get it.... He still hasn't brought up enough evidence to convince the Board there is widespread misconduct in the Police Department. Until I see something that would convince me I won't pay the bills for his defense.

*Id.*, Exhibit 7.

Stanton Bullock, on the other hand, made the following press statements about why he voted the way he did: (1) "I don't think Mr. Cooper's allegations were accurate, and I also don't think he handled it the right way;" (2) "It's entirely appropriate for Cooper to pluck down a retainer for an attorney out of his own damn checkbook;" (3) "If [Cooper] has to spend money for a lawyer, that will teach him a lesson to keep his mouth shut;" and (4) "I hope [McCaffrey and Knobel] do vote to hire an attorney because they'll be crucified in this Town;" (*Id.*) (5) "[Cooper] should behave like a responsible adult.... If he has a problem with my relationship with the Police Department, he should come to me and Chief Scott, [or] to the Town Board, not go make wild accusations to a Town newspaper." *The Independent,* "Misconduct Charges Erupt," (March 9, 1994).[4]

Because the balance of the Board voted against the Resolution, Councilman Cooper engaged legal counsel at his own expense to defend him in the defamation suit. Then on May 18, 1994, Cooper brought this federal case, Docket No. 94–CV–2446, (hereinafter *"Cooper I"*), against the Town of East Hampton and Councilmembers Bullock, Lester and McCaffrey, both individually and in their official capacities. In this case, Cooper seeks a Court Order directing the Town to provide him with a legal defense pursuant to § 20–6 of the Town Code and with certain monetary damages for not paying for his defense earlier.

Shortly after Cooper filed *Cooper I,* the Town of East Hampton brought a countersuit against him in the New York Supreme Court for Suffolk County wherein they seek a declaratory judgment as to the parties' rights and duties under § 20–6 of the Town Code and, in particular, as to whether the Town must provide a defense for Cooper. Cooper removed that case to this Court as Federal Docket No. 94–CV–4165 (hereinafter *"Cooper II"*).

On September 19, 1994, Cooper moved this Court for partial summary judgment in *Cooper I* and, on October 21, 1994, moved to dismiss *Cooper II.* The Town opposed both of these motions and brought a cross-motion to remand *Cooper II* to State Court. On October 28, 1994, this Court denied from the Bench Cooper's motion to dismiss *Cooper II.* The Court also granted the Town's motion to remand *Cooper II* to State Court.

On November 22, 1994, however, this Court issued a written Memorandum and Order reversing its Bench decision in *Cooper II* by denying the Town's motion to remand the case and staying all proceedings therein pending the outcome of *Cooper I,* 888 F.Supp. 374. This Order was based upon the fact that *Cooper I* and *Cooper II* encompass

---

4. Mr. Bullock also said the following to reporters from *The Independent:*

> Let the court decide the question. There have been lots of times when the Board didn't heed its attorney's advice, and this is another one of those times. Shea will probably prevail but I'd be much more comfortable having a judge order us to spend tax dollars to defend Cooper than to volunteer it.

Cooper's Verified Amended Complaint, Exhibit 7.

identical issues of fact and law pertaining to the rights, duties, and legal relations of the Town of East Hampton and Councilman Cooper.

On October 28, 1994, this Court also denied from the Bench Cooper's motion for partial summary judgment in *Cooper I* and dismissed the case *sua sponte* for lack of federal jurisdiction. Upon reconsideration, however, the Court hereby finds: (1) that it has subject matter jurisdiction over *Cooper I* because of the First Amendment claims therein, and (2) that the case shall remain in federal court.

*DISCUSSION*

The Complaint in *Cooper I* contains the following charges: (1) the Town violated Cooper's First Amendment right to freedom of speech by denying him a legal defense in retaliation for his "outspokenness" against the East Hampton Police; (2) The Town violated Cooper's rights of freedom of expression under Article I, Section 8 of the New York State Constitution; (3) The Town deprived Cooper of a property and liberty interest without due process of law as guaranteed by the Fifth Amendment; (4) The Town violated 42 U.S.C. § 1983 by denying Cooper a legal defense in violation of New York Public Officer's Law § 18 and § 20–6 of the East Hampton Town Code; (5) The Town violated § 20–6 of the East Hampton Town Code; (6) the Town negligently inflicted emotional distress upon Cooper; (7) the Town violated 42 U.S.C. § 1983 by not granting Cooper equal protection under the Fourteenth Amendment.

■ On October 28, 1994, this Court ruled from the bench that Cooper had failed to state a valid claim upon which relief could be granted pursuant to either 42 U.S.C. § 1983, the First Amendment, or the equal protection or due process clauses of the United States Constitution. Upon reconsideration of Cooper's First Amendment claims alone, however, this Court hereby finds that Cooper has sufficiently pleaded a violation of his First Amendment rights to warrant federal jurisdiction over *Cooper I*.

■ Specifically, on the basis of *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d

Cir.1994), this Court finds that Cooper has sufficiently pleaded the "requisite nexus" between the exercise of his First Amendment rights and the Defendants' subsequent "retaliatory" conduct in abstaining from voting on, or voting against, the Resolution regarding Cooper's legal defense. To establish a retaliation claim under the two-prong *Gagliardi* test, a plaintiff must show (1) "... that [his/her] conduct is protected by the [F]irst [A]mendment," and (2) that "defendant's conduct was motivated by or substantially caused by [plaintiff's] exercise of free speech." *Id.*, at 194 (quoting *Easton v. Sundram*, 947 F.2d 1011, 1015 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992)).

■ A public official's right to speak to the press and the public about his/her concerns or views is certainly protected by the First Amendment. It is, indeed, "beyond cavil that the First Amendment encompasses a freedom of expression that extends to political speech and the right to petition the government for a redress of grievances." Plaintiff's Memorandum of Law in Support of its Motion for Partial Summary Judgment at 12 (quoting *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 505, 89 S.Ct. 733, 735, 21 L.Ed.2d 731 (1969)). Thus, Cooper has sufficiently pleaded the first prong of the *Gagliardi* test.

With regard to the second prong of that test, the *Gagliardi* Court wrote that:

The ultimate question of retaliation involves a defendant's motive and intent, which are difficult to plead with specificity in a complaint ... *[yet] it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred.*

*Gagliardi*, 18 F.3d at 194 (emphasis added). For this proposition, the *Gagliardi* Court cited *Murphy v. Lane*, 833 F.2d 106 (7th Cir.1987), in which the Seventh Circuit wrote as follows:

Recognizing that the ultimate fact of retaliation for the exercise of a constitutionally protected right rarely can be supported with direct evidence of intent that can be pleaded in a complaint, ... *courts have*

*found sufficient complaints that allege a chronology of events from which retaliation may be inferred.... Conversely, alleging merely the ultimate fact of retaliation is insufficient.*

*Id.* at 108 (emphasis added).

The Plaintiff in *Murphy* filed four lawsuits against prison officials alleging that: (1) these officials arranged for Plaintiff to be transferred to another correctional facility in retaliation for his seeking judicial relief and redress against them; (2) the transfer occurred immediately after Plaintiff filed the lawsuits; and (3) the transfer was detrimental to Plaintiff because the new correctional facility was not equipped to handle Plaintiff's suicidal tendencies. The *Murphy* Court held that, for the purpose of overcoming dismissal, these allegations did set forth a chronology of events from which a retaliatory animus on the part of Defendants could "arguably" be inferred. *Id.* at 109.

Similarly, in *McDonald v. Hall,* 610 F.2d 16 (1st Cir.1979), the Court wrote as follows:

While it may be possible in some cases to support such an ultimate fact of retaliation with clear evidence which can be averred in the complaint, ... we cannot presume that this will often be the case.... Moreover, appellant in his complaint did aver a chronology of events which may be read as providing some support for an inference of retaliation.

*Id.* at 18. *See also Garland v. Polley,* 594 F.2d 1220 (8th Cir.1979) ("We conclude that there was a *genuine issue* as to whether [Plaintiff's] transfer violated the Constitution, inasmuch as it has been alleged that the *reason* for the transfer was his exercise of constitutional rights, ... the prisoner has stated a cause of action.") (emphasis added).

On the basis of the above mentioned case law, this Court concludes that there is, at least arguably, a genuine issue as to whether Defendants' actions were, at least in part, in retaliation for Cooper's exercise of his First Amendment rights. This Court, therefore, finds that Councilman Cooper has pleaded

the Defendants' retaliatory motive and intent with sufficient particularity to meet the second prong of the *Gagliardi* test and, thereby, to warrant federal jurisdiction.

This conclusion stems mainly from the statements quoted above-herein that Defendant Bullock made to the press with regard to why he voted against the Resolution. *See supra* at 378. The Court focuses, in particular, upon the following statement in this respect: "If [Cooper] has to spend money for a lawyer, *that will teach him a lesson to keep his mouth shut.*" Cooper's Verified Amended Complaint, Exhibit 7 (emphasis added). Indeed, Cooper could meet the standard for *pleading* the second prong of the *Gagliardi* test with this statement alone.

This Court's ruling on the issue of jurisdiction is by no means, however, an expression of its opinion on the merits of this case. Indeed, the facts of this case do not begin to match those of the *Gagliardi* case, and Cooper will face a substantial burden at trial in attempting to prove that the actual motivation for Defendants McCaffrey and Lester's actions was retaliation. This is due to the fact that Councilmembers McCaffrey and Lester's press statements indicate that they abstained or voted against the Resolution, respectively, because they did not believe there was enough evidence to substantiate Cooper's charges.[5] Thus, their votes were not necessarily "motivated by or substantially caused by" the exercise of Cooper's First Amendment rights or the content of his statements. As such, they may not have been retaliatory. *Gagliardi,* 18 F.3d at 194. Rather, in light of their expressed belief that Cooper's charges are unsubstantiated, Councilmembers Lester and McCaffrey may simply have been asserting their fiduciary duty as a matter of law not to misuse Town funds.

**CONCLUSION**

In sum, this Court finds that Councilman Cooper has sufficiently pleaded a violation of his First Amendment rights to: (1) give this Court federal jurisdiction over the *Cooper I*

---

**5.** *See supra* at 378. Specifically, McCaffrey said, "I see no evidence of problems with the police;" whereas Lester said, "... [Cooper] hasn't brought up enough evidence to convince the Board there is widespread misconduct in the Police Department. Until I see something that would convince me, I won't pay the bills for his defense."

case; (2) state a claim upon which relief can be granted; and (3) prevent this Court from dismissing the case.

As a result of the Court's findings herein, this case shall continue to proceed in the federal forum. In the interim, Robert Cooper's attorney, Patricia Weiss, Esq., is hereby ordered to submit an affidavit to the Court pertaining to her legal fees. In addition, the Town Defendant is ordered either (1) to put into escrow an amount equivalent to those attorneys fees, provided they are reasonable, pending the outcome of this case, or, (2) if Plaintiff posts a bond as security for repayment, to pay the sum requested by Plaintiff's attorney.

SO ORDERED.