**Muriel D. BLACK, Plaintiff-Appellant,**

v.

**Michael P. LANE, et al., Defendants-Appellees.**

No. 85–2935.

United States Court of Appeals, Seventh Circuit.

Argued April 3, 1987.

Decided July 13, 1987.

Diana C. White, Jenner & Block, Chicago, Ill., for plaintiff-appellant.

Rita M. Novak, Ill. Atty. Gen. Office, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, WOOD and POSNER, Circuit Judges.

BAUER, Chief Judge.

Muriel Black, a black resident at the Menard Correctional Center in Illinois, filed a *pro se* complaint in which he alleged that the responsible officials assigned prison jobs at Menard on a racially discriminatory basis. He also contended that prison officials had retaliated against him for filing a 1979 complaint with the Office of Civil Rights Compliance of the United States Department of Justice. In the administrative complaint, Black contended that blacks received the menial jobs at the prison while whites were assigned to the clerical jobs. The complaint resulted in a 1980 "resolution agreement" in which the Warden of

Menard agreed to comply with certain guidelines to ensure that there would not be racial discrimination in job assignments at the prison. The Warden also agreed not to retaliate against appellant Black for filing the administrative complaint.

Although Black made several specific allegations in support of his discrimination charge, the heart of his case is best illustrated by the following example. In late 1980, when Black was hired as a laundryman's helper in the protective custody unit, he was assigned to assist the head laundryman who was white. As head laundryman, the white inmate was allowed outside of his cell for thirteen hours a day, seven days a week. Black, who was only the helper, was confined to his cell after 2:00 p.m. on weekdays and throughout the weekend. After the head laundryman resigned because of a heart condition, Black became the head laundryman and was given a white helper. Black might have thought that he had been promoted until he learned that the privileges associated with the two positions had changed. The head laundryman's helper was permitted outside his cell for thirteen hours a day and during weekends. The new head laundryman, Black, was still confined to his cell after 2:00 p.m. and on weekends.

Black also made several specific allegations in support of his retaliation charge. These allegations are best illustrated by the experiences that Black had with two prison officers when he tried to perform the job that he began in December 1983. In order to perform his duties as a counselors' clerk for protective custody inmates, Black had to be out of his cell for extended periods of time. Black alleged that Sergeant Aldridge and Officer Inman prevented him from doing his job by locking him in his cell when he should have been performing his duties as a counselors' clerk. In addition, Black claimed that when the officers did allow him out of his cell, they harrassed him and prevented him from collecting inmates' counselor request slips, a duty that was an integral part of his job. The activities of Sergeant Aldridge and Officer Inman are only one example of the treatment that Black alleges he received because he filed a complaint with the Department of Justice.

The magistrate was unimpressed by the various charges made by Black. The magistrate summarily dismissed the "laundry" allegation, reasoning only that "[t]his states absolutely no claim." The magistrate granted summary judgment to Sergeant Aldridge and Officer Inman based on the affidavits that they had submitted to the court. In his affidavit, Sergeant Aldridge conceded that he had locked Black in his cell but contended that he had done so only when such action was required because of a "shortage of officers" or for "safety reasons." Officer Inman in his affidavit did not deny Black's charges that he had locked Black in his cell and prevented him from doing his job as a counselors' clerk. Inman contended, however, that he had done so "totally for reasons of security." Black responded by filing affidavits from various individuals supporting his charges but the magistrate decided to rely on the affidavits submitted by the state and granted summary judgment.

■ In disposing of this case, the magistrate made two critical errors that require reversal. First, the magistrate made an erroneous legal conclusion that a claim of racial discrimination "states absolutely no claim." In fact, absent a compelling state interest, racial discrimination in administering prisons violates the Equal Protection Clause of the Fourteenth Amendment. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Second, the magistrate granted summary judgment even though there was a genuine issue of material fact. *Reardon v. Wroan,* 811 F.2d 1025 (7th Cir.1987). The magistrate simply chose to believe the conclusory statements by the prison officials that they had confined Black merely for security reasons. In choosing to believe the prison officials, the magistrate obviously made an impermissible credibility determination. Credibility normally cannot be determined by summary judgment. *Hawkins v. Poole,* 779 F.2d 1267, 1269 (7th Cir.1985).

We have carefully considered the other arguments made by the state in support of the magistrate's decision and conclude that they do not require further discussion. We reverse the decision of the district court and remand for further proceedings. We also conclude, after considering the factors set forth in *Maclin v. Freake,* 650 F.2d 885 (7th Cir.1981), that this is an appropriate case for the appointment of counsel and therefore order the district court to appoint counsel on remand. Circuit Rule 36 shall apply.

REVERSED AND REMANDED.