Muriel D. BLACK, Plaintiff–Appellant,

v.

Michael P. LANE, Michael Neal, P.A. Severs, Captain, et al., Defendants–Appellees.

No. 92–3627.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 3, 1993.

Decided April 26, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied May 31, 1994.

Barbara S. Steiner, Diana C. White, Jerold S. Solovy, Howard S. Suskin, Paul A. Sheldon (argued), Jenner & Block, Chicago, IL, for plaintiff-appellant.

Jan E. Hughes, Asst. Atty. Gen., John P. Schmidt (argued), Office of Atty. Gen., Civ. Appeals Div., Chicago, IL, for defendants-appellees.

Before LAY,* RIPPLE and MANION, Circuit Judges.

LAY, Circuit Judge.

Muriel D. Black, after obtaining a default judgment against several of the defendants, appeals from an order of the magistrate judge dismissing his complaint for failing to state a claim for retaliation and for denial of his rights under the Due Process Clause.[1]

---

* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. The parties consented to disposition of this case by a magistrate judge.

We vacate the magistrate judge's order of dismissal and remand to the district court for further proceedings consistent with this opinion.

## I.

Black, an African–American prison inmate confined at the Menard Correctional Center in Illinois ("Menard"), filed *pro se* an action under 42 U.S.C. § 1983 against numerous prison officials.[2] Black alleged violations of his civil rights in the form of harassment, false disciplinary charges, segregation and other punishment. He complained of racial discrimination in job assignments; retaliation for filing complaints of racial discrimination, in violation of his First Amendment rights; violation of his right of access to the courts; and denial of both substantive and procedural due process.[3] Almost ten years after Black first filed suit, he finds himself at the conclusion of his second appeal to this court, still at the pleadings stage.

Black filed his original *pro se* complaint on May 11, 1984, and he filed a supplemental complaint on June 12, 1984. In July and September of 1984, the defendants filed motions to dismiss Black's complaint or alternatively for summary judgment. The magistrate judge granted summary judgment in favor of some of the defendants and dismissed the complaint against the other defendants in October of 1985. In July of 1987, this court reversed the 1985 judgment order, finding that Black had stated a cause of action for racial discrimination and that gen-uine issues of material fact existed regarding whether Black was confined because of racial discrimination or in retaliation for exercising his First Amendment rights in complaining of racial discrimination. *See Black v. Lane,* 824 F.2d 561 (7th Cir.1987) (*"Black I"*). This court directed the appointment of counsel and remanded.

Black was appointed counsel in the fall of 1987 and, after some turnover in appointed counsel, in October of 1989 he filed a second amended complaint (the "complaint"). The defendants filed a motion to strike Black's amended complaint. This motion was denied in January of 1990. In April of 1990 the defendants requested an extension of time to file their answer. They were granted an extension until April 30, 1990, which deadline they missed. The defendants requested and were granted another extension until May 7, 1990, to file their answer. The defendants again missed the deadline, and their third motion for extension of time to respond was denied on May 9, 1990. The defendants did not request reconsideration of the court's order. Black then filed a motion for default judgment. On June 27, 1990, the court entered a default order against the defendants. In October of 1990 the court denied the defendants' motion to vacate entry of default. The magistrate judge subsequently held hearings on the issue of damages in November and December of 1990.

In September of 1991, the court issued its order granting Black partial relief by awarding him $50.00 for racial discrimination.[4]

---

2. Although Black's initial complaint did not name all of these individuals as defendants, the defendants in his second amended complaint are Michael Lane, Director of the Illinois Department of Corrections; James Greer, Chief Administrative Officer (Warden) of Menard at all relevant times except for February 1, 1984, through May 8, 1987; Michael Neal, Assistant Warden for Program Services at Menard from January 1983 through September 1984; Ronald Fleming, Assistant Warden for Program Services for Menard from September 1984 through October 1986; Sandra McDonough, Health Care Administrator at Menard; Captains P.A. Severs, Cowan, and Gross, captains of the protective custody unit at Menard; Lieutenant M. Littleton, lieutenant of the protective custody unit at Menard; Sergeant C.R. Aldridge, sergeant of the segregation unit at Menard; K.G. Howard, correctional officer in the North Cellhouse; and John Inman, correctional officer in the North Cellhouse.

3. In 1979, Black filed an administrative complaint with the Office of Civil Rights Compliance of the United States Department of Justice alleging racial discrimination in employment assignments for inmates. The Department of Justice sustained his claim of discrimination and Menard signed a resolution agreement in 1980 promising to open up inmate jobs to all qualified applicants without regard to race.

4. Although we may agree with the argument Black makes in his reply brief that the award of $50.00 is "patently insufficient," we do not address this issue because it was not raised on appeal. We also note that the district court, in arriving at this amount, found that Black had

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the magistrate judge dismissed substantial parts of Black's complaint for failure to state a claim for which relief could be granted. At this point, the magistrate judge also dismissed approximately half of the defendants. The court dismissed as insubstantial the allegations that Black was denied access to the courts because the "period of time between plaintiff's activities and the alleged retaliatory conduct precludes a reasonable inference of retaliation." The court also dismissed Black's claim that he was denied due process when false disciplinary charges were levied against him, reasoning that being prosecuted under fabricated charges is not in itself a violation of procedural due process. Finally, the court ruled that Black's allegations of retaliation for his exercise of his First Amendment rights failed to allege personal involvement of the defendants or improper racial discrimination. On appeal, Black claims that his complaint states a claim for retaliation and for denial of his due process rights.

## II.

■ At the outset, we note that it was improper for the district court to dismiss any of Black's claims at a damages hearing without providing Black notice that the merits would be considered. *See Quirindongo Pacheco v. Rolon Morales,* 953 F.2d 15, 16 (1st Cir.1992) (per curiam) (holding that it was inappropriate for the district court to dismiss complaint for lack of evidence, after the entry of default, where court did not notify plaintiff that court intended to consider issue of liability).

### A. Retaliation

■ The district court dismissed Black's claim that he was retaliated against after

been subject to employment discrimination only for the two-year period from October of 1982 to November of 1984. Black's complaint indicates that he was harassed and beaten over an eight-year period, and these allegations are deemed true because of the default judgment entered against the defendants. Again, because Black did not raise this issue on appeal, we do not reach it.

filing a complaint of employment discrimination with the Office of Civil Rights Compliance of the United States Department of Justice. The court decided that the facts alleged by Black did not make out a claim for retaliation for the exercise of his right to petition for redress of grievances. The district court was not at liberty to make this determination, however, because almost six years ago this court found that Black had "made several specific allegations in support of his retaliation charge." *Black I,* 824 F.2d at 562. For example, this court observed:

> These allegations are best illustrated by the experiences that Black had with two prison officers when he tried to perform the job that he began in December 1983.... Black alleged that Sergeant Aldridge and Officer Inman prevented him from doing his job by locking him in his cell when he should have been performing his duties as a counselors' clerk. In addition, Black claimed that when the officers did allow him out of his cell, they harassed him and prevented him from collecting inmates' counselor request slips, a duty that was an integral part of his job. *The activities of Sergeant Aldridge and Officer Inman are only one example of the treatment that Black alleges he received because he filed a complaint with the Department of Justice.*

*Id.* (emphasis added). The same allegations were pleaded in Black's second amended complaint. Under the law of the case doctrine, the district court may not ignore this court's earlier decree. *See Key v. Sullivan,* 925 F.2d 1056, 1060 (7th Cir.1991) ("The gist of the [law of the case] doctrine is that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case.").[5]

5. The dissent suggests that the law of the case doctrine should not be applied to the holding in *Black I* because any ruling concerning the retaliation claim as stating a cause of action was dicta. The *Black I* court, in reviewing the grant of summary judgment for the defendants, determined that there existed genuine issues of material fact. In doing so the court implicitly held that the plaintiff's complaint stated a cause of action. Under *Celotex Corp. v. Catrett,* 477 U.S.

Not only was the district court required to accept this court's finding that Black had stated a claim of retaliation, but the district court also was obligated to accept as true all facts alleged in Black's complaint. All of Black's factual allegations are treated as true because a default judgment was entered against the defendants. When a default judgment is entered, facts alleged in the complaint may not be contested. *See Thomson v. Wooster,* 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105 (1885); *see also* Fed.R.Civ.P. 8(d) ("Averments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading."). Furthermore, "[a]s a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint." *United States v. Di Mucci,* 879 F.2d 1488, 1497 (7th Cir.1989). The entry of a default order does not, however, preclude a party from challenging the sufficiency of the complaint. *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir.1988), *cert. denied,* 493 U.S. 858, 110 S.Ct. 168, 107 L.Ed.2d 124 (1989).

In light of this court's previous decision in *Black I,* and considering that all facts alleged in Black's complaint are deemed true, we find without hesitation that it was erroneous for the district court to dismiss Black's claim of retaliation.

### B. The Second Amended Complaint

Even in the absence of the law of the case doctrine we find it was erroneous for the district court to dismiss Black's claim of retaliation. To state a cause of action for retaliatory treatment, a complaint need only "allege a chronology of events from which retaliation may be inferred." *Murphy v. Lane,* 833 F.2d 106, 108 (7th Cir.1987) (per curiam) (quoting *Benson v. Cady,* 761 F.2d 335, 342 (7th Cir.1985)); *see also Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7th Cir.1988).

Reviewing the actions of the various defendants, as is outlined in more detail in the addendum,[6] it is evident that Black has alleged continuous acts of harassment and beatings since the time he filed an administrative complaint with the Department of Justice. Immediately after the filing of the administrative complaint, and for the three-year period following it, the defendants interfered with Black's assigned tasks, withheld privileges, wrongfully confined him to his cell, and wrongfully issued false disciplinary tickets against Black. He was also confined for three days to a hot, flooded cell that had been closed as unfit for human habitation, where he suffered a heart attack.

The dissent suggests that Black's complaint should be given a narrow and restricted construction. Under the Supreme Court's recent holding in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993), however, a heightened pleading rule does not apply to § 1983 claims. Rather, Rule 8 of the Federal Rules of Civil Procedure is applicable.

317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), a reviewing court on a grant for summary judgment must always determine whether the nonmoving party has adduced sufficient facts to establish its case. As the Court in *Celotex* observed:

> Before the shift to "notice pleading" accomplished by the Federal Rules, motions to dismiss a complaint or to strike a defense were the principal tools by which factually insufficient claims or defenses could be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources. But with the advent of "notice pleading," the motion to dismiss seldom fulfills this function any more, and its place has been taken by the motion for summary judgment. Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

It is untenable to suggest that this court in *Black I* merely determined the existence of a factual dispute without implicitly ruling that the plaintiff had adduced sufficient facts to sustain his claim for relief.

6. Contrary to the dissent's implication that the addendum includes "extrinsic matters" obtained from the expanded record before the *Black I* court, this addendum includes only facts that are in Black's second amended complaint, which is before this court at the present time.

Rule 8 simply requires conformity "with the liberal system of 'notice pleading.'" *Id.* The dissent is critical that Black's complaint has categorized certain retaliatory allegations under the heading of "Racial Discrimination" and others under "Retaliation." [7] This overlooks the fact that both sections of the complaint contain a continuous chronological sequence of retaliation dating from the time of Black's complaint to the Office of Civil Rights Compliance of the United States Department of Justice. As the Supreme Court observed in another context: "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn." *Soldal v. Cook County, Ill.,* —— U.S. ——, ——, 113 S.Ct. 538, 548, 121 L.Ed.2d 450 (1992).

In evaluating Black's complaint, we read his complaint as a whole. This court stated in *Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073 (7th Cir.1992), that while

it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it.... A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents.... [A] court should ask whether relief is possible under any set of facts that could be established consistent with the allegations.

*Id.* at 1078 (citations omitted); *see also Kaylor v. Fields,* 661 F.2d 1177, 1180 (8th Cir. 1981) (in reviewing a civil rights complaint to determine if it stated a claim for which relief could be granted, the court noted that the complaint was "sketchy" and "short on spe-

cific facts," but proceeded to view the complaint as a whole).

Additionally, and contrary to the dissent's view that a three-year time period existed between Black's filing of a racial discrimination complaint and the occurrence of retaliatory acts, Black asserts in his reply brief that the

defendants wholly ignore that the Second Amended Complaint has alleged that, immediately after the filing of Black's administrative grievance, and during the following three-year period, defendants continuously retaliated against Black by interfering with Black's assigned tasks, withholding privileges accorded to other prisoners, wrongfully confining Black to his cell while white inmates were allowed out of their cells, and wrongfully issuing false disciplinary tickets against Black, causing the loss of his good time credits.

Rule 8(f) of the Federal Rules of Civil Procedure requires this court to construe "[a]ll pleadings ... to do substantial justice." Under notice pleading rules, it is for the parties to produce their evidence at trial. Here, due to the defendants' default, there was no trial. The plaintiff did, however, attempt to set forth the facts supporting his claims in an evidentiary proceeding before the district court on damages. The defendants, of course, can no longer contest the facts supporting the damages. They have defaulted.

Weighing all of the facts in the pleadings together, and not simply viewing each incident in isolation, Black has shown that he was retaliated against by the various defendants. We find that Black should be awarded reasonable compensation for the physical and mental harm he suffered.

---

7. In his first complaint, Black separated the facts into three claims. Each of the claims contained portions of what was later combined in the second amended complaint under the heading of racial discrimination. In the supplemental complaint, Black addressed in separate claims (six in total) how he was locked in his cell and prevented from working, the harassment he received, the fact that he was trained for a clerk position and then transferred back to a porter position,

that he did not receive needed medical treatment, and that he complained to Greer but Greer did not intervene. This court's opinion in *Black I* did not separate the facts under each claim but rather considered them in total as they related to Black's claims of racial discrimination and retaliation. *See Black I,* 824 F.2d at 562. In his second amended complaint, Black separates the facts into two counts: he seeks relief for racial discrimination and for retaliation.

### C. Dismissal of Several Defendants

■ The district court dismissed several of the defendants as not being involved in the harassment nd beatings of Black. The district court found defendants Severs, Aldridge, Neal, Inman and Howard jointly and severally liable. The court dismissed, however, defendants Cowan, Gross, Littleton, McDonough, Fleming, Lane and Greer for lack of personal involvement. Our reading of the complaint is to the contrary. Other than Greer,[8] each defendant who was dismissed is specifically named in the complaint and was involved in the beatings or other forms of harassment inflicted upon Black.

For example, Lane, the Director of the Illinois Department of Corrections, approved an unjustified disciplinary ticket issued by Aldridge and Inman; another unjustified disciplinary ticket issued by Inman; and other false disciplinary charges that Littleton, Cowan and Gross initiated after they beat Black. When various defendants refused to let Black out of his cell to go to work and Black filed a grievance, Lane upheld a committee's decision to refer the matter to the prison librarian and to take no other action.

As this court has held, an official meets the "personal involvement" requirement when " 'she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent.' " *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985) (citation omitted). In *Rowe,* we held the Director of the Department of Corrections liable because the director "knew of the actions of his subordinates which resulted in a constitutional violation" and "failed to take any preventive action." *Id.* At a minimum, Lane is presumed to have knowledge of Menard's resolution agreement with the Department of Justice and thus of the unlawful practices at Menard. He failed, however, to take any preventive action and thus Black's complaint

sufficiently alleges Lane's personal involvement.

The other defendants also were personally involved in Black's constitutional deprivations. Cowan on two occasions ordered Black to move from his single cell to a double cell. Black refused, explaining that the prison psychologist had decided that Black should be in a single cell because of his heart attack, his age, and numerous threats on his life by inmate gang members. One time, when Black refused to move, Cowan repeatedly beat him. Another time Cowan stood by as Littleton and others beat Black. Cowan also caused false disciplinary charges to be brought against Black. Gross repeatedly beat Black on one occasion when Black refused to move from his single cell to a double cell, and also caused false disciplinary charges to be brought against Black. Littleton repeatedly beat Black on two occasions when Black refused to move from his single cell to a double cell, and also caused false disciplinary charges to be brought against Black. McDonough reprimanded a white clerk who was about to be transferred for telling Black about the job vacancy. McDonough threatened to block that inmate's transfer so that the position would not be available to Black. McDonough subsequently ordered Black to return to his porter assignment even though he had been trained for the clerk position. Fleming repeatedly attempted to force Black into a double cell, causing Black to fear for his health and safety.

Black's complaint alleged personal involvement of all of the defendants, with the exception of Greer. Thus, it was improper for the district court to dismiss the other defendants.

### D. Procedural Due Process

■ The district court dismissed the procedural due process aspect of Black's complaint, reasoning that Black had not al-

---

8. The magistrate judge properly dismissed Greer, the Chief Administrative Officer at Menard. Although Greer is named as a defendant, there are no factual allegations involving him other than that he was charged with the administration of Menard and is responsible for all persons at Menard. This is not sufficient personal involve-

ment for the imposition of liability. *See Potter v. Clark,* 497 F.2d 1206, 1207 (7th Cir.1974) (per curiam) (proper to dismiss complaint that "alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption").

leged that the requirements of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974),[9] were not met and thus that Black failed to state a claim for a due process violation. Due process requires not only that *Wolff* be satisfied, but also that the disciplinary decision be supported by "some evidence." *See Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir.1988); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir.1984) (per curiam); *see also Superintendent, Massachusetts Correctional Inst. v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 2773, 86 L.Ed.2d 356 (1985) ("[R]evocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." (citation omitted)).

Again, we note that because of the default judgment entered against the defendants, the facts alleged in Black's complaint are deemed true. Similarly, in considering whether to dismiss portions of Black's complaint, the district court was required to accept Black's factual allegations as true. *See Gillman v. Burlington N.R. Co.*, 878 F.2d 1020, 1022 (7th Cir.1989).

Black's complaint states a claim for violation of his procedural due process rights by alleging that the defendants repeatedly and systematically filed and approved false and unjustified disciplinary charges, which resulted in segregation and the loss of good time. We understand "false" and "unjustified" to mean that the tickets and resulting segregation and loss of good time were not supported by any evidence. Thus, Black stated a claim for violation of his procedural due process rights because the disciplinary decisions were not supported by some evidence.[10]

## E. Substantive Due Process

The district court disregarded Black's claim that his substantive due process rights were violated. An allegation of deprivation of due process rights states a claim under both procedural and substantive due process. *See Kauth v. Hartford Ins. Co.*, 852 F.2d 951, 954 n. 4 (7th Cir.1988); *Brown v. Texas A & M Univ.*, 804 F.2d 327, 336 (5th Cir.1986). Issuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right.[11] *See Cain*, 857 F.2d at 1145

---

**9.** As this court has noted, prison disciplinary hearings must meet the following requirements to satisfy the Due Process Clause:

1. Written notice of the charge against the prisoner, given at least twenty-four hours prior to the hearing.
2. The right to appear in person before an impartial hearing body.
3. The right to call witnesses and to present documentary evidence, when to do so will not unduly jeopardize institutional safety or correctional goals.
4. A written statement of reasons for the disciplinary action taken.

*Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir.1988) (citing *Wolff*, 418 U.S. at 563–67, 94 S.Ct. at 2978–80).

**10.** Although the dissent contends that Black did not raise a due process claim in his complaint, we cannot agree. Under the "legal claims" section of his second amended complaint, Black specifically claims that the defendants violated his due process rights "by deliberately pursuing charges against plaintiff causing him to be wrongfully confined in segregated housing and wrongfully increasing the length of his incarceration by the improper confiscation of his good time." Reading as a whole the factual allegations of the complaint, as discussed previously,

we find that there are numerous facts that support Black's due process claim.

**11.** Relying on *McKinney v. Meese*, 831 F.2d 728 (7th Cir.1987) (per curiam), the defendants assert that filing false disciplinary charges against an inmate does not state a due process claim if the *Wolff* requirements are met and the disciplinary action is supported by some evidence. Although *McKinney* involved allegations of retaliation, it was not retaliation for the exercise of a constitutional right. The inmate in *McKinney* was disciplined for killing an inmate, but claimed that his discipline was in retaliation for the actions of another inmate who killed a guard. *Id.* at 729, 733. Because McKinney did not allege that he was retaliated against for the exercise of a constitutional right, his due process rights were not violated provided he received the procedural protections required by *Wolff* and there was some evidence to support the disciplinary action. *See id.* at 733–34. The fact that Black alleges retaliation for the exercise of a constitutional right, whereas McKinney did not, is a decisive distinction. Thus, the defendants' reliance on *McKinney*, as well as *Hanrahan v. Lane*, 747 F.2d 1137, 1139–40 (7th Cir.1984) (per curiam), is misplaced.

(" 'The observance of procedural formalities cannot render valid an infringement upon inalienable constitutional rights.' " (quoting *Shango v. Jurich*, 681 F.2d 1091, 1098 n. 13 (7th Cir.1982))); *see also Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.1989) (noting that the filing of a disciplinary charge against a prisoner, "although otherwise not actionable under section 1983, is actionable under section 1983 if done in retaliation for [the prisoner's] having filed a grievance pursuant to established procedures").

In *Cale v. Johnson*, 861 F.2d 943 (6th Cir.1988), a case with similar facts, a prisoner alleged that as a result of complaining about the poor quality of the food, a prison guard planted drugs on him and filed false disciplinary charges against him. *Id.* at 944–45. The Sixth Circuit, in reversing the district court's grant of summary judgment in favor of the defendants, found that it would be a violation of the prisoner's substantive due process rights if the prison official had abused his authority by retaliating against the prisoner for exercising his First Amendment rights. *Id.* at 948. The court determined that the alleged conduct of the prison guard amounted to an egregious abuse of authority such as to deprive the prisoner of his substantive due process rights, and further noted the enhanced risk that the prisoner "was in danger of further loss of liberty through disciplinary detention and through the loss of good-time credit as the result of the charges filed against him." *Id.* at 949–50.

As addressed previously, the facts alleged in Black's complaint create an inference that Black was retaliated against for the exercise of his constitutional rights. Black specifically alleged that disciplinary tickets were issued in retaliation for his successful pursuit of an administrative complaint. This conduct by prison officials is an egregious abuse of power such as to violate Black's substantive due process rights. Hence, Black stated a claim for violation of his substantive due process rights and the district court improperly dismissed this claim.

Finally, we note that when faced with a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Procedure, courts must be mindful not to dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). With this standard in mind, we deem it obvious that the district court erred in dismissing the bulk of Black's complaint. As an addendum to this opinion, we have listed in chronological order the treatment that Black alleged he received at the hands of prison officials.

### III.

The defendants have chosen to default in this case. Although they may contest the amount of damages, the defendants lack standing to deny liability for all factual allegations now deemed admitted. Muriel Black is a prison inmate and has been punished by segregation from society. This does not mean that he may be subjected by the state to racial discrimination, harassment, beatings, and other forms of punishment. Confinement to prison is the extent of his punishment for the crime he has committed. He still must be treated humanely. According to the state's own admission, he was not.

This case is remanded to the district court. We recommend that a district judge hold the hearing on the award of damages under the default judgment. The hearing should be held as expeditiously as possible.

Judgment vacated and remanded.

### ADDENDUM

What follows is a chronological listing of the facts alleged in the plaintiff's complaint, which are deemed true as a result of the default judgment entered against the defendants.

*January–February 1979:* Plaintiff was assigned to work as a porter in the Menard prison hospital. All inmate porters and ward attendants were black and all inmate clerks were white. Plaintiff soon learned of an upcoming job opening for an X-ray and laboratory inmate clerk and told the hospital administrator, Sandra McDonough, that he had thirty years of clerical experience. The white inmate who held the position, Kimpel, was expecting a transfer which was approved

in February of 1979. Plaintiff overheard Mc-Donough reprimand the white inmate for telling plaintiff about the vacancy and threatened to block the transfer. McDonough told plaintiff he could have the job if it became vacant. Plaintiff was trained for the clerk position but then was told that McDonough had ordered him off the clerk's job and back on the porter assignment.

*Late March 1979:* Kimpel's transfer was blocked and one of McDonough's employee's wrote a disciplinary report claiming the plaintiff threatened him.

*April 1979:* Plaintiff was found guilty of the alleged disciplinary infraction, lost his job, and was transferred to a different cell house.

*June 4, 1979:* Plaintiff filed an administrative complaint of employment discrimination with the Office of Civil Rights Compliance of the United States Department of Justice ("DOJ").

*August 1979—June 1980:* Plaintiff was transferred from protective custody unit to segregation unit for no apparent reason, where he had no job opportunities.

*February 1980:* DOJ issued its investigative findings sustaining plaintiff's charge of job discrimination.

*April 1980:* Menard Correctional Center signed a resolution agreement promising to open up inmate jobs to all qualified applicants without regard to race.

*Late 1980:* Plaintiff was assigned to work as a laundry person's helper and then as head laundry person. As a helper, he assisted the head laundry person, who was white. The head laundry person was allowed out of his cell for thirteen hours a day, seven days a week, but plaintiff was allowed out of his cell only seven hours a day and only on weekdays. After the head laundry person resigned and plaintiff replaced him, a white inmate became plaintiff's helper. Sergeant Phoenix then reversed the privileges associated with each job so that plaintiff, as head laundry person, was allowed out of his cell to work for seven hours a day and only on weekdays. Plaintiff's white helper was allowed out for thirteen hours a day, seven

days a week. This caused plaintiff to quit the head laundry person job. Plaintiff subsequently inquired about clerk's positions in the protective custody unit and in the inmate kitchen, but learned that those positions were held only by white inmates.

*July 1982:* Aldridge put plaintiff in a hot, flooded cell that had been closed by the prison medical staff as being unfit for human habitation. After being confined for three days, plaintiff suffered a heart attack.

*October 1982:* Plaintiff worked as a law clerk for the protective custody unit from October 1982 to December 1983. On numerous occasions, plaintiff was prevented from leaving his cell to do his work. Defendants Severs, Aldridge, and Neal were personally involved in the restrictions. Severs often let white clerks leave their cells to work while restricting plaintiff, and two correctional counselors had to remind Severs that plaintiff should be allowed out of his cell to work. Aldridge allowed white inmates with no job classification out of their cells but would not let plaintiff out to work. Plaintiff approached Neal on various occasions about the cell restrictions. Neal offered to intervene but did not correct the problem and the practice continued. Plaintiff's supervisor, Darla Stoffel, informed Neal of plaintiff's work hours and responsibilities and asked that plaintiff be allowed to work. Neal did not respond.

*August 1983:* Specific instance where plaintiff was not allowed out of his cell to work.

*November 14, 1983:* Plaintiff filed a grievance concerning confinement during work hours. The committee decided to refer the matter to the prison librarian, and this decision was upheld by Lane.

*December 1983:* Plaintiff quit his job as law clerk out of frustration over trying to complete his job assignments while under confinement. He was reassigned as a counselor's clerk. Restrictions on plaintiff's out of cell time, as well as verbal harassment, continued. Aldridge, Inman and Howard participated in restrictions, and subjected plaintiff to verbal harassment when he tried to do his job.

*March 1984:* On March 1, Howard refused to let plaintiff out of his cell to do his work

while allowing white inmates out of their cells. On March 2, Officer Lee did the same. On March 4, Aldridge ordered plaintiff to return to his cell after an officer had let plaintiff out to work. White inmates were allowed to remain out of their cells.

*May 19, 1984:* Howard locked plaintiff in his cell after plaintiff had been out for only three hours of work. Howard let white inmates stay out of their cells. Inman often refused to let plaintiff out of his cell, and when seeing plaintiff out of his cell would continually harass him.

*June 29, 1984:* Unjustified disciplinary ticket was written by Aldridge and Inman and approved by Lane, charging the plaintiff with taking "Kites" out. of the protective custody mailbox for the counselor. This was part of his duties as counselor's clerk. The disciplinary ticket resulted in plaintiff's assignment to segregation, demotion for thirty days, and removal from his counselor's clerk job on July 6, 1984.

*July 31, 1984:* Chairperson of the job classification committee for the protective custody unit told plaintiff that he would be reinstated as a counselor's clerk when he returned to protective custody and that no other inmate would be assigned to that position. When plaintiff returned to the position, his assignments had been given to white inmates and there was little work left for plaintiff to do.

*September and October 1984:* Plaintiff complained to the job classification chairperson that he was not receiving paperwork to do his job and that the white clerk was doing the work previously done by plaintiff.

*October 13, 1984:* Inman ordered Officer Miller to lock plaintiff in his cell during his scheduled work shift.

*October 14, 1984:* On two occasions, Sergeant Biggs refused to allow plaintiff out of his cell to work, but let approximately twenty other inmates out of their cells.

*November 1984:* Counselor Frailey took over the position of chairperson of the protective custody classification committee. Frailey told plaintiff that because of plaintiff's prob-

lems with. the guards, plaintiff could not keep his job as a counselor's clerk. That day, plaintiff was fired from his position as a counselor's clerk.

*March 1985:* As a result of plaintiff's heart attack, his age and numerous threats on plaintiff's life by inmate gang members, prison psychologist Dr. Gupta prescribed that plaintiff be housed in a single cell for his medical and physical safety. Lane, Neal, Fleming, Gross, Cowan and Littleton were all aware of plaintiff's need to be placed in a single cell but repeatedly attempted to force him into a double cell.

*March 7, 1985:* Plaintiff was approached in his single cell by Cowan and Littleton and ordered to. move to a double cell with an unknown inmate. Plaintiff refused, explaining that he feared for his health and safety. The officers entered his cell and repeatedly beat plaintiff, injuring him severely.

*June 27, 1986:* Plaintiff was again approached in his cell by Littleton and Cowan, as well as three unknown correctional officers, and ordered to move to a double cell. Plaintiff again refused and explained why Dr. Gupta had prescribed a single cell. Littleton and two of the correctional officers entered plaintiff's cell and repeatedly beat him, injuring him severely, while Cowan and the third correctional officer stood by.

*March 7, 1987:* While in his cell, plaintiff was approached by Gross, an unknown lieutenant, and two unknown correctional officers, and ordered to move to a double cell. When plaintiff refused to move, Gross and the lieutenant entered plaintiff's cell and repeatedly beat him, injuring him severely., Following the beatings that occurred on three occasions when plaintiff refused to move, Littleton, Cowan and Gross caused false disciplinary charges to be brought against plaintiff. Lane approved the false charges causing plaintiff to be wrongfully placed in segregated confinement and resulting in the illegal confiscation of plaintiff's good time and increasing the length of his sentence.

MANION, Circuit Judge, dissenting.[1]

On June 4, 1979, Muriel Black, an inmate at the Menard Correctional Center in Illinois,

---

1. I agree with the court's conclusion in footnote 4 that since Black did not challenge the magis-

filed an administrative complaint with the United States Department of Justice, alleging that prison officials assigned various prisoner jobs on the basis of race in violation of the Fourteenth Amendment. Black contends that he has since been the target of a campaign of retaliation, in the form of threats and assaults, on the part of Menard prison officials. Black, proceeding *pro se*, filed a complaint for discrimination and retaliation. The district court dismissed the discrimination count and granted summary judgment on the retaliation count. On appeal this court reversed. *Black v. Lane*, 824 F.2d 561 (7th Cir.1987) ("*Black I*"). On remand Black's appointed counsel filed a second amended complaint. For some reason the defendants missed the deadline for filing an answer and defaulted. The magistrate judge awarded minimal damages for the discrimination count and dismissed the retaliation (and other) counts for failure to state a claim. Since neither side appealed any portion of the discrimination judgment, the primary remaining issue is the retaliation claim.

It is not clear from the complaint that the retaliation claim stems from the July 4, 1979 filing. However, the magistrate judge and this court in *Black I* clearly stated that any alleged retaliation was tied to that complaint before the Department of Justice; thus I accept that determination. According to his second amended complaint, the first purported act of official retaliation did not occur until July of 1982, more than three years after Black had filed his administrative complaint. The magistrate, relying upon this Circuit's previous decisions in *Murphy v. Lane*, 833 F.2d 106 (7th Cir.1987), and *Benson v. Cady*, 761 F.2d 335 (7th Cir.1985), found that this three-year gap precluded an inference of retaliatory intent on the part of the prison officials and dismissed Black's complaint. On this appeal the court concludes that the magistrate was not free to point out this obvious defect because the court in *Black I* had previously determined that Black's original complaint had sufficiently stated a claim of retaliation, and that this earlier determination was binding upon the

trate's award of damages for his claim of racial discrimination in his initial brief to the court, that issue is not before us in his appeal. There-

magistrate through law of the case. For the following reasons, I respectfully dissent.

## I.

Certain passing statements made in *Black I* do not constitute the law of the case now before us. In *Black I*, the original magistrate granted summary judgment to the State on Black's claim of retaliation. In reaching its determination, the magistrate relied upon the affidavits of two prison officials, Sergeant Aldridge and Officer Inman, in which both conceded that they had locked Black in his cell and prevented him from performing his job as a counselor's clerk, but stated that they did so not out of retaliation but for security reasons. On appeal, the only issue before the court in *Black I* with respect to the retaliation claim was whether the State, by filing its affidavits, had actually created a question of credibility which could not properly be determined on summary judgment. The court in *Black I* correctly concluded that such was the case and appropriately remanded this issue with the expectation that it would be further explored and determined, if necessary, at trial. Thus, the only "decree" in *Black I* to which law of the case would apply was the court's conclusion that the magistrate, in choosing to believe the officers instead of Black, had made an impermissible credibility determination and that this was inappropriate on summary judgment. *Id.* 824 F.2d at 562.

But the court in *Black I* was not asked to address—and indeed did not address—whether the limited facts as contained in Black's complaint were by themselves sufficient to state a claim for retaliation. As I pointed out earlier, *Black I*'s discussion revolved around the issue of credibility. *Black I* did not conclude that keeping Black locked in his cell during his scheduled work assignment *was* retaliation, but simply noted that the affidavits explaining the lockup created a question of fact barring summary judgment. Had the State simply moved to dismiss, and never filed its affidavits, the magistrate

fore, Black's appeal is confined to the magistrate's dismissal of his claims for retaliation and denial of due process.

would have been left only with Black's complaint, from which he would have had to determine whether Black had alleged such misconduct that would permit a reasonable inference of retaliatory intent on the part of Menard prison officials. But as it turned out, the State's attorney, perhaps unconvinced that the court would dispose of the complaint by dismissal, submitted some affidavits thinking that this would boost her chances of success. What this strategy actually achieved, however, was to create issues of credibility, thus forcing the issue beyond the pleadings. For this reason the court in *Black I* never had the occasion to address the sufficiency of the complaint alone to see if it stated a plausible claim of retaliation. Therefore, any of the statements in *Black I* regarding the substance of Black's allegations were at most non-binding *dicta* offered in the expectation that these matters would be determined only after the presentation of evidence at trial. They certainly are not part of the court's judgment in *Black I* which would constitute law of the case. *See Coca-Cola Bottling Co. of Schreveport, Inc. v. Coca-Cola Co.*, 988 F.2d 414, 429–30 (3rd Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 289, 126 L.Ed.2d 239 (1993) (*dicta* cannot be the predicate ruling to which law of the case applies); *see also* 18 Charles B. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 4478 at 788 (1983) (law of the case only acts to prevent reconsideration by a subsequent appellate court of matters that were once *resolved* by a prior panel). Therefore, the magistrate on remand committed no error in not treating *Black I*'s reference to the allegations as law of the case.

We now have a different issue than we had in *Black I*. The affidavits that generated the factual questions are not before us. Given the State's default, we now come back to ground zero—the amended complaint as it applies to retaliation. The only question is whether the allegations contained in Black's second amended complaint sufficiently stated a claim of retaliation. It is true that, upon

the magistrate's entry of default, the State lost all standing to challenge the truth of the well-pleaded *facts* contained in Black's complaint. *See United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir.1989); *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir.1983). But, contrary to the court's intimations, the State still retained the right to test the sufficiency of the allegations to see if they stated a claim for which relief may be granted. *See Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1988), *cert. denied*, 493 U.S. 858, 110 S.Ct. 168, 107 L.Ed.2d 124 (1989) (on appeal the defendant is entitled to challenge the sufficiency of the complaint and its allegations to support the judgment); *see also* 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688 at 447–48 (1983) ("it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit to mere conclusions of law.").

To successfully make out a claim for retaliation for the exercise of a constitutionally protected right, a plaintiff has the burden of proving the ultimate fact of retaliation. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir.1987); *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir.1985). One method of proving retaliation and of avoiding dismissal, is to allege a chronology of events from which the ultimate fact of retaliation plausibly may be inferred. For the inference to be a plausible one, however, there must not be a significant gap in time between the exercise of protected activity and the purported act of retaliation. We have previously held that a *five-month* gap "greatly weakens any inference" that an act was taken in retaliation for the exercise of constitutional rights. *See Benson*, 761 F.2d at 342.[2] Here, the chronology of events alleged in Black's second amended complaint clearly reveal a *three-year* gap between the filing of the administrative complaint on June 4, 1979, and the first purported act of retaliation in July of 1982. Other alleged acts of

---

2. In fact, the only decision in this Circuit expressly finding that a complaint had sufficiently alleged retaliatory intent involved a litigious inmate who alleged that he was transferred from one correctional center to another "immediately"—or, in any event, no more than *two months*—after filing suit against prison officials. *See Murphy*, 833 F.2d at 109, 109 n. 1.

retaliation for filing the 1979 complaint occurred even later in 1984, 1985, 1986 and 1987. On its face, therefore, this chronology of events does not allow a reasonable inference of retaliation.

The court avoids this three-year gap by essentially rewriting Black's complaint. The court provides a helpful "addendum" in which it "lists" the chronology of the various actions the defendants took towards Black from the moment he filed his complaint with the Justice Department. Yet this chronology bears no resemblance whatsoever to the chronology of purportedly retaliatory acts that Black actually alleged in his second amended complaint. Our analysis is confined to what he says in the complaint for retaliation; it cannot include whatever extrinsic matters we may glean from the expanded record that was before the court in *Black I. See Kush v. Amer. States Ins. Co.*, 853 F.2d 1380, 1382 (7th Cir.1988). Nor can we consider allegations in the separate count of discrimination which has been adjudicated and is not on appeal. In Black's second amended complaint there is a subheading "B" captioned "Count II—Retaliation For Exercising Constitutional Rights," under which the first alleged act of retaliation is the incident occurring in July of 1982, three years after Black filed his complaint with the Justice Department. By comparison, however, the court's chronology reaches back to incidents which occurred in August of 1979, two months after Black filed his administrative complaint, and which continued through to June of 1980. The court even goes so far as to list various incidents occurring one to three months *before* Black blew the whistle on the State's discriminatory practices. The court "has no duty to conjure up allegations in order to bolster the plaintiff's chances of surviving a 12(b)(6) motion to dismiss." *Fleet Credit Corp. v. Sion*, 893 F.2d 441, 444 (1st Cir.1990) (internal quotations omitted). Nor is it appropriate for this court to cure Black's complaint by discovering the missing allegations in a reply brief, which "is neither a complaint or an amendment to a com-

plaint." *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir.1993) ("If a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations [in a brief.]").[3] Black had able counsel and ten years to get it right. The defendants blew the deadline, but even without opposition Black's complaint will not hold up. Therefore, based on the facts that were actually pleaded in support of Black's retaliation claim, I would affirm the magistrate judge's decision to dismiss the insufficient claim for retaliation.

### II.

Also, Black's pleadings do not allege a denial of procedural, and certainly not substantive, due process. First, with respect to Black's procedural due process claim, it is apparent that Black has failed to plead any "factual" allegations. In his complaint Black merely asserted in conclusory fashion that the prison officials had "knowingly and falsely" issued "unjustified" disciplinary tickets. Yet nowhere in his complaint does Black allege that he was denied the procedural protections first set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and followed by this court in *Hanrahan v. Lane*, 747 F.2d 1137 (7th Cir. 1984), *McKinney v. Meese*, 831 F.2d 728 (7th Cir.1987), and *Cain v. Lane*, 857 F.2d 1139 (7th Cir.1988), that were designed to guard against just this very sort of arbitrary action. The court correctly sets forth these requirements in footnote 9 of its opinion so I won't repeat them here. But *Hanrahan* holds that merely alleging—as was done here—that prison officials used false evidence as a basis to issue disciplinary tickets, "fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided." *Hanrahan*, 747 F.2d at 1141. Black cannot dodge dismissal of wholly conclusory procedural due process claims simply by omitting crucial allegations from his pleadings.

---

**3.** Moreover, it is inconsistent for the court to look to Black's reply brief in hopes of propping up his retaliation claim, *see* op. at 1400–01, yet refuse (rightly, as I pointed out earlier) to rely on it when it comes to his challenge to the magistrate's award of damages for discrimination. *See* op. at 1397 n. 4.

Because Black failed to allege that he was deprived of the procedural due process protections as set forth in *Wolff,* this portion of Black's complaint fails to state a claim.[4]

It is correct that a claim in the district court for a violation of due process in general sufficiently preserves for appellate review any argument regarding substantive, as well as procedural, due process. *See Kauth v. Hartford Ins. Co. of Illinois,* 852 F.2d 951, 954 n. 4 (7th Cir.1988). But here the court claims to have found authority from this Circuit in *Cain, supra,* as well as the Eighth Circuit in *Sprouse v. Babcock,* 870 F.2d 450 (8th Cir.1989), which purportedly allows a prisoner to recycle his retaliation claim and get extra mileage out of it by framing it as a violation of substantive due process. Neither *Cain* nor *Sprouse* support this conclusion. *Cain* involved allegations that a prison's disciplinary committee issued disciplinary tickets to a prisoner in retaliation for the prisoner's exercise of his right to free speech as guaranteed by the First and Fourteenth Amendments. *See Cain,* 857 F.2d at 1141–42. In making the statement relied upon by this court, the court in *Cain* was simply noting that otherwise appropriate procedural formalities cannot be used as a coverup for an infringement of the right to free speech. *Cain* certainly did not authorize the use of a substantive due process analysis to cure First Amendment violations. Furthermore, the issue before the Eighth Circuit in *Sprouse* was whether, for purposes of 42 U.S.C. § 1983, the plaintiff's complaint alleged a violation of a substantive versus a procedural right. *See Sprouse,* 870 F.2d at 452. Viewed in their proper context it is clear that the referenced passages from *Sprouse* have absolutely nothing to do with *substantive* due process. Such oblique authority hardly provides the solid legal under-

pinning necessary to legitimize what this Circuit would otherwise reject as a redundant claim. In sum, the court can point to no solid legal authority from this Circuit or elsewhere for its assertion that Black's claim alleges a violation of substantive due process.[5]

### III.

In conclusion, there is no question that Black's allegations—which we must accept as true, given the procedural posture of this case—state several caustic incidents on the part of Illinois prison officials. But notwithstanding the severity of these allegations, Black's claim could not, at least consistent with this Circuit's law, state a claim of retaliation, and for that reason the magistrate judge was correct in ordering this complaint dismissed. And the fact that the State missed its deadline after remand and, as a result, wound up with an entry of default should not, under the appropriate standard of review, have altered this result. Therefore, I would affirm the magistrate judge's order dismissing Black's claims for retaliation and denial of due process, and reinstate the judgment in favor of defendants.

---

4. Along these same lines, the court's discussion of the "some evidence" standard is irrelevant to this action. That standard merely refers to our limited review of a disciplinary committee's findings when these are being challenged as unsupported by the evidence. *Cain,* 857 F.2d at 1145; *Hanrahan,* 747 F.2d at 1140, 1141. But we don't even get to that inquiry where, as here, the plaintiff has not included in his complaint any allegations concerning the actions taken and

findings given by the disciplinary committee in issuing its decision.

5. As to *Cale v. Johnson,* 861 F.2d 943 (6th Cir. 1988), I simply note that it purports to find support for its holding in *Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988), a case which, like *Sprouse,* addressed whether a plaintiff had, for purposes of § 1983, alleged a violation of a substantive constitutional right.