74 F.3d 1242
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Gene V. GRAHAM, Petitioner-Appellant,
v.
Daniel R. McBRIDE, Respondent-Appellee.
 No. 94-3234.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 28, 1995.*
Decided Jan. 17, 1996.
 
 Before POSNER, Chief Judge, and FAIRCHILD and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 After exhausting his state law remedies, inmate Gene Graham challenges, pursuant to 28 U.S.C. Sec. 2254, three adverse decisions by the Westville Correctional Center's Conduct Adjustment Board (CAB). Because Graham is proceeding pro-se, we shall read his complaint liberally. See Bagola v. Kindt, 39 F.3d 779, 780-81 (7th Cir.1994).
 
 I. Urinalysis Complaint
 
 2
 Graham challenges the CAB decision in complaint WCC-93-03-0358, in which Graham pleaded guilty to refusing to submit to an urinalysis test. The CAB disciplined him by revoking 180 days of good time credit. Graham contends that the prison guard was mistaken in ordering an urinalysis test and that Graham therefore could not be sanctioned for violating an unlawful order.
 
 
 3
 Urinalysis tests are searches for Fourth Amendment purposes, Forbes v. Trigg, 976 F.2d 308, 312-13 (7th Cir.1992), cert. denied, 113 S.Ct. 1362 (1993), and therefore must be conducted in a constitutionally reasonable manner. See Bell v. Wolfish, 441 U.S. 520, 560, 99 S.Ct. 1861, 1885 (1979). Thus, if it was "reasonable" to require Graham to submit to an urinalysis test, then his subsequent refusal to cooperate cannot be validated under the Fourth Amendment. Substance abuse has long been recognized as pervasive in detention centers, Block v. Rutherford, 468 U.S. 576, 588-89 (1984), and the efforts by prison officials to preserve internal order and discipline are routinely accorded "wide-ranging deference" by the courts. Bell, 441 U.S. at 547, 99 S.Ct. at 1878. For these reasons, prison officials may force prisoners to undergo random urinalysis testing. Lucero v. Gunter, 17 F.3d 1347, 1349-50 (10th Cir.1994); Forbes, 976 F.2d at 312-13.
 
 
 4
 Graham claims, however, that the testing was not random, but in retaliation for his complaints against prison officials. "[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir.1987). A prisoner has a fundamental constitutional right to access to the courts, and may maintain an action for damages against any prison official who retaliates against him for exercising his right to judicial relief. Bounds v. Smith, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494 (1977). To state a claim based on retaliation, the prisoner must (1) allege a chronology of events from which retaliation can be inferred, Black v. Lane, 22 F.3d 1395, 1399 (7th Cir.1994), and (2) show that retaliation was a motivating factor behind the defendant's conduct. Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285-87, 97 S.Ct. 568, 575-76 (1977).
 
 
 5
 On the day that Graham was asked to submit to an urinalysis test, he was transferred to an area of the prison called "Post-3" for misconduct. The official in charge of Post-3 mistakenly thought that Graham was designated as one of the prisoners in Post-3 scheduled for an urinalysis test. The state concedes that Graham was not designated for testing, but maintains that the mistake was innocent and that Graham was rightly disciplined for his refusal to submit to testing. Graham insists that retaliation can be inferred from the mere fact that Officer McCoy or Officer Vales knew who Graham was. However, Graham does not allege or provide a foundation to believe that Officer McCoy had motive to cause Graham to be disciplined or sanctioned. Without more, Graham failed to allege that the disciplinary report was motivated in retaliation for his complaints. See Mount Healthy, 429 U.S. at 287; Benson v. Cady, 761 F.2d 335, 342 (1985).
 
 II. Notice of Drug Testing Policy
 
 6
 Graham takes issue with the CAB's decision in complaint WCC 92-10-53, arising from another instance in which Graham refused to submit to an urinalysis. He claims that he did not have adequate notice of the drug testing policy. Due process requires that inmates receive fair notice of a rule before they can be sanctioned for its violation. Forbes, 976 F.2d at 314. In Forbes, we held that a memoranda of a prison's urine testing policy posted in petitioner's work station was sufficient to find constructive notice. Id. Here, two days before Graham refused the drug test, the prison's superintendent posted in all living units a memoranda explaining the penalties for refusing to submit to an urinalysis. R. 8, Ex. A. This posting provided Graham with sufficient notice of the drug testing policy.
 
 III. Disorderly Conduct
 
 7
 Graham also contests the CAB's decision in WCC 92-9-180, in which Graham was charged with disorderly conduct in the prison law library. He alleges that he was the victim of retaliation for his suits against prison officials. The CAB disciplined Graham with a one month loss of recreational privileges. This allegation should have been brought pursuant to 42 U.S.C. Sec. 1983. See Graham v. Broglin, 922 F.2d 379, 381 (7th Cir.1991). The sanctions imposed by the CAB affected no liberty interest, therefore any due process allegation brought by Graham fails. A State may choose to keep its prisoners in a range of custodial conditions without infringing upon a prisoner's liberty or property interests. Sandin v. Conner, 115 S.Ct. 2293, 2301 (1995). In Sandin, the Supreme Court found an inmate's thirty-day punitive segregation to be typical and not sufficiently significant to implicate a liberty interest. Id. at 2300. The thirty day loss of recreational privileges, therefore, does not impinge on Graham's liberty interest.
 
 Conclusion
 
 8
 Accordingly, the judgment of the district court is affirmed.
 
 
 9
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and record